**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:26-cv-26233-MD**

**KAREN DAYANA HERNANDEZ MARTINEZ,** individually and on behalf of all others similarly situated, and on behalf of her minor child, **FATIMA VALENTINA REVEROL HERNANDEZ, and MARCOS JAVIER REVEROL GARCIA,**

Plaintiffs,

vs.

**MARKWAYNE MULLIN**, in his official capacity as Secretary of the U.S. Department of Homeland Security; **U.S. DEPARTMENT OF HOMELAND SECURITY**; **JOSEPH B. EDLOW**, in his official capacity as Director of U.S. Citizenship and Immigration Services; and **U.S. CITIZENSHIP AND IMMIGRATION SERVICES**,

Defendants.

**CLASS ACTION**

**FIRST AMENDED CLASS ACTION COMPLAINT FOR APA JUDICIAL REVIEW, DECLARATORY, AND INJUNCTIVE RELIEF**

Plaintiffs Karen Dayana Hernandez Martinez (A#233-087-937), Marcos Javier Reverol Garcia (A#233-087-944), and Karen Dayana Hernandez Martinez, on behalf of her minor child, Fatima Valentina Reverol Hernandez (A#233-087-934), by and through undersigned counsel, bring this First Amended Class Action Complaint challenging Defendants' promulgation and application of the July 28, 2026 interim final rule permitting referral of affirmative asylum applications to removal proceedings without

an asylum interview. Plaintiff Karen Dayana Hernandez Martinez brings the class claims individually and on behalf of all others similarly situated pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2). Plaintiffs Marcos Javier Reverol Garcia and Fatima Valentina Reverol Hernandez remain individual plaintiffs and do not seek appointment as class representatives.

Plaintiffs seek judicial review and relief pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702, 705, and 706, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202. This Court has jurisdiction under 28 U.S.C. § 1331. In support thereof, Plaintiffs respectfully allege as follows:

## INTRODUCTION

1. This action challenges Defendants' promulgation and application of a newly issued interim final rule to Plaintiffs' pending affirmative asylum application. The rule permits USCIS to refer certain affirmative asylum applications to removal proceedings without first providing the asylum interview contemplated by the regulatory framework in effect when the application was filed.

2. Plaintiff Karen Dayana Hernandez Martinez filed her Form I-589, Application for Asylum and for Withholding of Removal, with USCIS on September 25, 2024. At the time of filing, she was not in removal proceedings. Her husband, Plaintiff Marcos Javier Reverol Garcia, and minor daughter, Plaintiff Fatima Valentina Reverol Hernandez, were included as derivative beneficiaries.

3. USCIS accepted the application, processed Plaintiffs' biometrics, and expressly advised Plaintiffs that they would receive separate notice directing them to appear for an asylum interview. Their application thereafter remained pending before USCIS for nearly two years without an interview or adjudication.

4. On July 28, 2026, DHS promulgated *Affirmative Asylum Referrals Without Interview*, 91 Fed. Reg. 47,101 (July 28, 2026), an interim final rule authorizing USCIS to refer certain affirmative asylum applications to Immigration Court without first conducting an asylum interview. DHS made the Rule effective immediately and expressly applied it to affirmative asylum applications that were already pending before USCIS when the Rule took effect.

5. DHS acknowledged in promulgating the Rule that applicants with pending applications "may have relied on USCIS' practice of interviewing in every case when filing the Form I-589." Nevertheless, the Rule permits USCIS to refer those pending applications without an interview and, in some cases, without first issuing a Request for Evidence or otherwise providing the applicant an individualized opportunity to supplement the written record.

6. Plaintiffs filed their application under the prior regulatory framework, received written notice from USCIS that an asylum interview would follow, and have never been afforded that interview. Defendants have since taken concrete steps to place Plaintiffs into removal proceedings without first providing the interview USCIS represented they would receive, including directing Plaintiffs to report to immigration authorities for issuance of Notices to Appear.

7. Plaintiffs do not challenge DHS's discretionary authority to commence removal proceedings or ask this Court to adjudicate the merits of their asylum application. Rather, they challenge the legality of the generally applicable Rule and agency action by which Defendants eliminated a longstanding adjudicatory procedure from applications that were already pending when the Rule took effect.

8. The Rule was promulgated without the notice-and-comment procedures required by the Administrative Procedure Act, is alleged to be contrary to governing law and in excess of statutory authority, and constitutes arbitrary and capricious agency action, including because Defendants failed to adequately account for the serious reliance interests created by the prior regulatory framework.

9. Plaintiff Karen Dayana Hernandez Martinez brings these claims individually and on behalf of a proposed class of similarly situated affirmative asylum applicants whose applications were pending with USCIS when the Rule took effect and who face referral to removal proceedings without first receiving an asylum interview. Plaintiffs seek declaratory and equitable relief holding unlawful the challenged Rule and preventing its unlawful application to Plaintiffs and the proposed Class.

## JURISDICTION AND VENUE

10. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, and the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.* The APA

provides a cause of action for judicial review but does not independently confer federal jurisdiction. *Califano v. Sanders*, 430 U.S. 99, 105–07 (1977).

11. The APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.

12. This Court may hold unlawful and set aside agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "in excess of statutory jurisdiction, authority, or limitations," or undertaken "without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (C), (D).

13. This Court may also postpone the effective date of agency action or preserve the status quo pending judicial review to the extent necessary to prevent irreparable injury. 5 U.S.C. § 705.

14. The July 28, 2026 Interim Final Rule constitutes final agency action subject to judicial review under 5 U.S.C. § 704. The Rule marks the consummation of Defendants' decisionmaking process and carries immediate legal consequences because it amended governing regulations and became effective upon publication. *See Bennett v. Spear*, 520 U.S. 154, 177–78 (1997).

15. Plaintiffs have no other adequate remedy in a court through which to obtain review of the legality of Defendants' promulgation and implementation of the Rule. Nor is there an administrative process through which Plaintiffs may obtain review of the validity of the Rule itself.

16. Plaintiffs' claims are ripe. The Rule is presently operative, applies expressly to asylum applications that were pending when it took effect, and Defendants have taken concrete steps to apply the Rule to Plaintiffs' pending Form I-589. Plaintiffs therefore challenge an existing agency rule and its present application, not a contingent or hypothetical future policy.

17. No further administrative exhaustion is required. Plaintiffs challenge the legality of a final agency rule, and no statute or agency regulation provides an administrative procedure through which Plaintiffs may obtain review of that challenge. *See Darby v. Cisneros*, 509 U.S. 137, 153–54 (1993).

18. Pursuant to 28 U.S.C. §§ 2201–2202, this Court may declare the rights and other legal relations of the parties and grant further necessary or proper relief based upon such declaration.

19. Venue properly lies in the Southern District of Florida pursuant to 28 U.S.C. § 1391(e)(1). Plaintiffs reside within this District, and a substantial part of the events and omissions giving rise to their claims occurred within this District, including USCIS's processing of Plaintiffs' affirmative asylum application through the Miami Asylum Office.

20. Section 1252(g) does not strip this Court of jurisdiction. That provision is directed to claims arising from the Government's decision or action to "commence proceedings, adjudicate cases, or execute removal orders." 8 U.S.C. § 1252(g); *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 482 (1999). Plaintiffs do not seek review of Defendants' discretionary decision whether to commence removal proceedings against

any particular noncitizen. Rather, Plaintiffs challenge the legality of a generally applicable agency rule governing the procedures USCIS employs in processing pending affirmative asylum applications before referral.

21. Section 1252(b)(9) likewise does not bar jurisdiction. Plaintiffs do not seek review of a final order of removal, any ruling entered in removal proceedings, or the merits of any individual asylum claim. Their claims concern Defendants' promulgation and implementation of a generally applicable agency rule governing USCIS's affirmative asylum process. Such a collateral challenge to agency practices and procedures is distinct from direct review of an individual immigration determination. *See McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479, 492–94 (1991); *Jennings v. Rodriguez*, 583 U.S. 281, 293–95 (2018).

22. Section 1158(a)(3) does not bar Plaintiffs' claims. Plaintiffs do not ask this Court to review any individual determination made under 8 U.S.C. § 1158(a)(2), including whether any applicant complied with the one-year filing requirement or qualifies for an exception. Plaintiffs instead challenge the legality of the generally applicable Rule governing the procedures by which USCIS may process and refer affirmative asylum applications.

23. Section 1252(f)(1) likewise does not foreclose this action. Section 1252(f)(1) limits lower courts' authority to enjoin or restrain the operation of the statutory provisions codified at 8 U.S.C. §§ 1221–1232. *See Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022). Plaintiffs challenge an agency rule governing affirmative asylum procedures under 8

U.S.C. § 1158 and do not seek to enjoin or restrain the operation of the statutory provisions identified in § 1252(f)(1).

24. Accordingly, Plaintiffs' claims are independently cognizable under this Court's federal-question jurisdiction because they challenge the legality of Defendants' generally applicable rule and procedures, rather than seeking district-court review of an individual removal determination.

## PARTIES

25. Plaintiff, Karen Dayana Hernandez Martinez, is a native and citizen of Venezuela. Her alien number is 233-087-937. She is the principal applicant on the pending Form I-589 at issue in this action.

26. Plaintiff, Marcos Javier Reverol Garcia, is a native and citizen of Venezuela. His alien number is 233-087-944. He is the spouse of Karen Dayana Hernandez Martinez and is included as a derivative beneficiary on her pending Form I-589.

27. Plaintiff, Fatima Valentina Reverol Hernandez, is a minor native and citizen of Venezuela. Her alien number is 233-087-934. She is the daughter of Karen Dayana Hernandez Martinez and is included as a derivative beneficiary on the pending Form I-589. She brings this action through her mother and next friend, Karen Dayana Hernandez Martinez.

28. Defendant, Markwayne Mullin, Secretary of the Department of Homeland Security ("DHS"), is charged with administering and enforcing the laws governing immigration and naturalization. He is sued in his official capacity.

29. Defendant, U.S. Department of Homeland Security, is the federal agency responsible for the administration and enforcement of the immigration laws and is the agency that promulgated the Interim Final Rule challenged in this action.

30. Defendant, Joseph B. Edlow, is the Director of United States Citizenship and Immigration Services ("USCIS"), a component of DHS. He is sued in his official capacity based upon his responsibility for administering and enforcing the laws and regulations governing affirmative asylum applications.

31. Defendant, United States Citizenship and Immigration Services, is the federal agency responsible for adjudicating Plaintiffs' affirmative asylum application and implementing the Interim Final Rule challenged in this action.

## LEGAL BACKGROUND

### A. Statutory and Regulatory Framework Governing Affirmative Asylum

32. Congress provides that any noncitizen who is physically present in the United States or who arrives in the United States, irrespective of immigration status, may apply for asylum. 8 U.S.C. § 1158(a)(1).

33. The Secretary of Homeland Security may grant asylum to an applicant who has applied in accordance with the governing requirements and procedures and whom the Secretary determines to be a "refugee" within the meaning of the Immigration and Nationality Act ("INA"). 8 U.S.C. §§ 1101(a)(42), 1158(b)(1)(A).

34. Congress directed the Executive Branch to "establish a procedure for the consideration of asylum applications." 8 U.S.C. § 1158(d)(1). Congress further provided that, absent exceptional circumstances, "the initial interview or hearing on the asylum application shall commence not later than 45 days after the date an application is filed." Id. § 1158(d)(5)(A)(ii). Congress separately authorized consequences where an applicant fails, without authorization or exceptional circumstances, to appear for an "interview or hearing." Id. § 1158(d)(5)(A)(v).

35. Congress authorized the Attorney General and Secretary to impose additional conditions or limitations on the consideration of asylum applications by regulation, provided those conditions are "not inconsistent with this chapter." 8 U.S.C. § 1158(d)(5)(B). Section 1158(d)(7) separately provides that nothing in subsection (d) shall be construed to create a substantive or procedural right or benefit legally enforceable against the United States or its officers.

36. USCIS has initial jurisdiction over an affirmative asylum application filed by a noncitizen physically present in the United States, subject to specified regulatory exceptions. 8 C.F.R. § 208.2(a)(1)(i). Removal proceedings before an Immigration Judge commence when DHS files the charging document with the Immigration Court. 8 C.F.R. § 1003.14(a). Once the Immigration Judge has jurisdiction over the underlying proceeding, sole jurisdiction over the asylum application lies with the Immigration Judge. Id. § 1003.14(b).

37. The regulations governing affirmative asylum interviews provide that an asylum officer conducts the interview in a non-adversarial manner and that the purpose of the interview is to “elicit all relevant and useful information bearing on the applicant’s eligibility for asylum.” 8 C.F.R. § 208.9(b). An applicant may appear with counsel, present witnesses and evidence, correct or supplement the application, and respond to questions from the asylum officer. Id. § 208.9(b)–(d).

**B. Development of the Affirmative Asylum Interview Process**

38. In 1990, following notice-and-comment rulemaking, the former Immigration and Naturalization Service (“INS”) substantially reorganized the affirmative asylum process, established a professional corps of asylum officers, and adopted regulations providing for non-adversarial interviews conducted by specially trained asylum officers. *See* Asylum and Withholding of Deportation Procedures, 55 Fed. Reg. 30,674 (July 27, 1990).

39. In 1994, INS proposed making affirmative asylum interviews discretionary. *See* Rules and Procedures for Adjudication of Applications for Asylum or Withholding of Deportation, 59 Fed. Reg. 14,779 (Mar. 30, 1994). After receiving public comments, INS declined to adopt that proposal and retained the interview requirement, explaining that there would be “no provision for immediate referral of cases, without an interview, to an immigration judge.” Rules and Procedures for Adjudication of Applications for Asylum or Withholding of Deportation, 59 Fed. Reg. 62,284, 62,285 (Dec. 5, 1994).

40. The 1994 final rule provided that, for each complete affirmative asylum application within the agency's jurisdiction, "an interview shall be conducted by an asylum officer." Id. at 62,293. The same rule amended 8 C.F.R. §§ 208.10 and 208.14 to refer expressly to an applicant's "right to an interview" with an asylum officer and permitted referral without an interview where the applicant had waived that right. Id. at 62,293–94.

41. In 1997, INS amended the regulations in implementing the Illegal Immigration Reform and Immigrant Responsibility Act of 1996. *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10,312 (Mar. 6, 1997). Although the agency revised § 208.9(a) to provide that it "shall adjudicate the claim of each asylum applicant" within its jurisdiction, it retained the regulatory reference to the applicant's "right to an interview." Id. at 10,341.

42. In 2000, following notice and comment, INS further amended the asylum regulations to specify that, where a statutory prohibition on filing appeared applicable, an asylum officer would review the issue "in an interview," while an Immigration Judge would do so "in a hearing." Asylum Procedures, 65 Fed. Reg. 76,121, 76,131 (Dec. 6, 2000).

43. In explaining that amendment, INS stated that the determination whether a filing prohibition applied "could best be made after" the asylum officer, in an interview, or the Immigration Judge, in a hearing, provided the applicant an opportunity to present relevant and useful information concerning the possible prohibition. Id. at 76,123.

44. The relevant interview provisions thereafter remained materially in place until July 28, 2026. DHS itself acknowledged when promulgating the Rule challenged here that the Asylum Division had maintained a "long-standing practice of offering an interview to all aliens" who filed affirmative asylum applications within USCIS's jurisdiction. *Affirmative Asylum Referrals Without Interview*, 91 Fed. Reg. 47,101, 47,102 (July 28, 2026).

**C. Eleventh Circuit Law Governing Asylum Procedures**

45. In *Haitian Refugee Center v. Smith*, 676 F.2d 1023 (5th Cir. Unit B 1982), the former Fifth Circuit considered a class challenge to an INS program that accelerated the processing of asylum applications. Decisions of Unit B of the former Fifth Circuit issued after September 30, 1981 are binding precedent in the Eleventh Circuit. *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir. 1982).

46. *Haitian Refugee Center* held that the governing asylum statute and regulations reflected a "clear intent to grant aliens the right to submit and the opportunity to substantiate their claim for asylum." 676 F.2d at 1038. The court further recognized that agency deviation from applicable regulations and procedures may warrant judicial relief and sustained relief requiring a procedurally fair mechanism for reprocessing the affected asylum applications. Id. at 1041 & n.48.

47. Sitting en banc, the Eleventh Circuit subsequently reaffirmed the statutory and regulatory aspect of that holding. *Jean v. Nelson*, 727 F.2d 957, 976 n.27, 982–83 (11th Cir. 1984) (en banc), aff'd, 472 U.S. 846 (1985). The court held that immigration authorities are required to comply with applicable statutory provisions, regulations,

and policy statements and reaffirmed that the protected right to apply for asylum prevents government officials from adopting policies inconsistent with the governing statute, regulations, and announced operating procedures. Id. at 982–83. *Jean* disapproved *Haitian Refugee Center* only to the extent its separate constitutional analysis conflicted with the en banc court's treatment of the rights of excludable aliens. Id. at 976 n.27.

**D. The July 28, 2026 Interim Final Rule**

48. On July 28, 2026, DHS published *Affirmative Asylum Referrals Without Interview*, 91 Fed. Reg. 47,101 (July 28, 2026), corrected at 91 Fed. Reg. 55,735 (Aug. 31, 2026) (the "Interim Final Rule" or "Rule"). The Rule became effective immediately upon publication. DHS did not first publish a notice of proposed rulemaking or provide an advance opportunity for public comment. Instead, DHS solicited post-promulgation comments through September 28, 2026.

49. The Rule permits USCIS to refer certain affirmative asylum applications to the Executive Office for Immigration Review ("EOIR") without first conducting an asylum interview. USCIS continues to conduct an interview before granting or denying asylum, but an applicant who is amenable to referral to EOIR may now be referred without an interview. 91 Fed. Reg. at 47,101, 47,111.

50. First, the Rule amended 8 C.F.R. § 208.4(a) to remove the words "in an interview" from the provision governing an asylum officer's review of apparent statutory prohibitions on filing. Before the amendment, that provision directed the asylum officer, "in an

interview," to review the application and provide the applicant an opportunity to present relevant and useful information concerning any apparent prohibition on filing. 91 Fed. Reg. at 47,111, 47,128.

51. Second, the Rule added 8 C.F.R. § 208.9(a)(2), entitled "Referrals without interview." That provision authorizes an asylum officer, "[n]otwithstanding the interview procedures described in this section," to refer an affirmative asylum application to an Immigration Judge without conducting an interview, based upon review of the record and other relevant evidence. 8 C.F.R. § 208.9(a)(2).

52. Section 208.9(a)(2) permits referral without interview where the asylum officer determines that the applicant is barred from applying for asylum, is barred from a grant of asylum, does not merit asylum as a matter of discretion, or is not eligible on the merits of the claim. Id. USCIS retains discretion to conduct an interview where the officer cannot determine from the record whether referral is appropriate or otherwise concludes that an interview is warranted. 91 Fed. Reg. at 47,111.

53. Third, the Rule amended 8 C.F.R. § 208.10 to remove the phrase "right to an" interview and amended § 208.14(c) to authorize referral without an interview and remove the corresponding reference to an applicant's "right to an" interview. 91 Fed. Reg. at 47,111, 47,128.

54. Fourth, the Rule amended 8 C.F.R. § 208.19 so that a written referral decision is no longer required to include an assessment of the applicant's credibility. Id. at 47,111, 47,128.

55. In addition to those codified amendments, DHS announced that USCIS may determine that an applicant does not merit asylum as a matter of discretion without first determining whether the applicant is statutorily eligible for asylum. DHS acknowledged that this represented "a significant departure from its previous long-standing use of discretion in affirmative asylum adjudications." Id. at 47,115.

56. DHS expressly applies the Rule both to applications filed after July 28, 2026 and to applications already pending with USCIS that have not been scheduled for an initial asylum interview. Id. at 47,111. DHS further stated that the Rule would be "applied to those with pending asylum applications upon publication." Id. at 47,116.

57. In considering reliance interests, DHS acknowledged that affirmative asylum applicants had become accustomed to presenting their claims to an asylum officer at a scheduled interview and that applicants with pending cases "may have relied on USCIS' practice of interviewing in every case when filing the Form I-589." Id. at 47,112, 47,116. DHS stated that pending applicants may be given an opportunity to supplement the record through such measures as a Request for Evidence or public notice, while USCIS retains discretion whether to request additional evidence before referral. Id. at 47,112.

58. The Rule therefore replaces the prior practice of offering an asylum interview before referral with a system under which USCIS may adjudicate whether an affirmative application is amenable to referral from the written record and other evidence alone

and, where the regulatory criteria are satisfied, refer the application directly to EOIR without first conducting an asylum interview.

## FACTUAL ALLEGATIONS

59. Plaintiffs Karen Dayana Hernandez Martinez, Marcos Javier Reverol Garcia, and their minor daughter, Fatima Valentina Reverol Hernandez, are citizens and nationals of Venezuela.

60. Plaintiffs entered the United States on September 29, 2023, under the VHP class of admission. Karen's Form I-94 reflects an authorized stay through September 27, 2025. *See* **Exhibit B**.

61. On September 25, 2024, Plaintiff Karen Dayana Hernandez Martinez filed Form I-589, Application for Asylum and for Withholding of Removal, with USCIS, four days before the first anniversary of her entry into the United States.

62. Plaintiffs Marcos Javier Reverol Garcia and Fatima Valentina Reverol Hernandez were included as derivative beneficiaries on Karen's Form I-589.

63. USCIS accepted the Form I-589 for processing, assigned Receipt Number MGL2426280854, and confirmed that the complete application was received and pending as of September 25, 2024. *See* **Exhibit A**.

64. The Receipt Notice identified Karen, Marcos, and Fatima as applicants associated with the Form I-589. *See* **Exhibit A**.

65. USCIS expressly informed Plaintiffs that they would receive notice directing them to appear for biometrics collection and would separately receive notice directing them to appear for an asylum interview. *See* **Exhibit A**.

66. Plaintiffs proceeded through USCIS's affirmative asylum process and complied with USCIS's biometrics requirements. *See* **Exhibit C**.

67. Plaintiffs' Form I-589 thereafter remained pending with the Miami Asylum Office without an asylum interview.

68. On November 8, 2025, USCIS issued Karen an Annual Asylum Fee Receipt confirming receipt of the required $100.00 annual asylum fee associated with the same Form I-589. *See* **Exhibit D**.

69. Plaintiffs' affirmative asylum application therefore remained pending with USCIS for nearly two years under the regulatory framework in effect when the application was filed.

70. On July 28, 2026, while Plaintiffs' Form I-589 remained pending and before USCIS had provided Plaintiffs an asylum interview, DHS promulgated the Interim Final Rule challenged in this action.

71. The Interim Final Rule became effective immediately and authorized USCIS to refer certain affirmative asylum applications to Immigration Court without first conducting an asylum interview.

72. Defendants expressly made the new Rule applicable to affirmative asylum applications that had been filed and remained pending before the Rule took effect.

73. USCIS has never provided Plaintiffs an affirmative asylum interview.

74. Nevertheless, DHS has taken concrete steps to place Plaintiffs into removal proceedings without first providing the affirmative asylum interview contemplated by the regulatory framework under which their application was filed and processed.

75. Plaintiffs were directed to appear before ICE on September 10, 2026, for issuance of Notices to Appear.

76. As of the filing of this First Amended Complaint, Plaintiffs have not been served with Notices to Appear, and removal proceedings have not commenced before EOIR.

77. Defendants have therefore begun the process of transferring Plaintiffs' asylum claims from USCIS's non-adversarial affirmative asylum process to adversarial removal proceedings without first providing the asylum interview USCIS expressly represented they would receive.

78. Plaintiffs filed and maintained their Form I-589, complied with USCIS's processing requirements, and remained within USCIS's affirmative asylum process for nearly two years before Defendants changed the governing procedure.

79. USCIS specifically represented to Plaintiffs in writing that they would receive an asylum interview notice. Plaintiffs therefore had concrete reliance interests in the

continuation of the affirmative asylum procedure under which their application was filed and processed. *See* **Exhibit A**.

80. Defendants are applying the newly promulgated Rule to Plaintiffs' pending asylum application in a manner that permits their claims to be transferred to removal proceedings without the asylum interview contemplated by the regulatory framework in effect when the application was filed.

## CLASS ACTION ALLEGATIONS

81. Plaintiff Karen Dayana Hernandez Martinez brings the class claims pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2), individually and on behalf of all others similarly situated.

### A. Class Definition

82. Karen seeks to represent a proposed Class consisting of all noncitizens who filed an affirmative Form I-589 over which USCIS had initial jurisdiction before July 28, 2026; whose applications remained pending with USCIS on July 28, 2026; who had not been scheduled for or received an initial asylum interview as of that date; who do not maintain a lawful basis to remain in the United States; and whose applications are subject to the July 28, 2026 Interim Final Rule permitting referral to EOIR without an asylum interview.

83. Excluded from the proposed Class are persons whose asylum applications were not within USCIS's initial jurisdiction; persons who received an affirmative asylum interview before July 28, 2026; persons independently entitled to an interview pursuant

to a statute, court order, or settlement agreement that the Rule expressly preserves; Defendants and their officers and agents in their official capacities; and the judicial officers assigned to this action and their immediate families.

84. Membership in the proposed Class is ascertainable through objective criteria reflected in Defendants' own records, including the filing date and status of the Form I-589, whether USCIS had initial jurisdiction over the application, whether an initial asylum interview was scheduled or conducted, and the applicant's immigration status.

**B. Numerosity - Rule 23(a)(1)**

85. The proposed Class is so numerous that joinder of all members is impracticable.

86. In promulgating the Rule, DHS reported that approximately 1,434,145 affirmative asylum applications were pending and identified hundreds of thousands of pending applications as potentially affected by referral without interview. *See Affirmative Asylum Referrals Without Interview*, 91 Fed. Reg. 47,101, 47,103, 47,117 (July 28, 2026).

87. The precise number of Class members is within Defendants' possession and can be determined from agency records. The size of the pending affirmative asylum population and DHS's own estimates establish that joinder of all affected applicants is impracticable.

**C. Commonality - Rule 23(a)(2)**

88. There are questions of law and fact common to the proposed Class because every Class member is subject to the same Interim Final Rule and challenges the legality of the same agency action.

89. The common questions include whether DHS was required to provide advance notice and an opportunity for public comment before promulgating the Rule; whether the Rule qualifies for the exceptions in 5 U.S.C. §§ 553(a)(1) or 553(b)(A); whether DHS lawfully made the Rule effective immediately under 5 U.S.C. § 553(d); whether the Rule is contrary to law or exceeds DHS's statutory authority under 8 U.S.C. § 1158; whether DHS acted arbitrarily and capriciously in reversing longstanding affirmative asylum procedures without adequately addressing prior agency judgments, reliance interests, important consequences, and reasonable alternatives; and whether Defendants may lawfully apply the Rule to affirmative asylum applications that were already pending when the Rule became effective.

90. These questions are capable of classwide resolution because their answers depend upon the validity of a single generally applicable agency rule, the administrative record supporting that Rule, and the governing statutes and regulations, rather than upon the merits or factual circumstances of any individual Class member's asylum application.

91. Plaintiffs do not ask this Court to determine whether Karen or any absent Class member is ultimately eligible for asylum or whether DHS may ultimately commence removal proceedings against any particular Class member. Resolution of the common questions concerning the legality of the Rule will generate answers applicable to the Class as a whole.

**D. Typicality - Rule 23(a)(3)**

92. Karen's claims are typical of the claims of the proposed Class.

93. Karen filed an affirmative Form I-589 within USCIS's initial jurisdiction before July 28, 2026. Her application remained pending when the Rule became effective, she had not received an affirmative asylum interview, and USCIS had expressly advised her that she would separately receive notice directing her to appear for such an interview.

94. Karen is subject to the same Rule that permits Defendants to transfer the asylum applications of Class members from USCIS's affirmative asylum process to EOIR without first providing an asylum interview.

95. Karen's claims and those of the proposed Class arise from the same course of conduct—Defendants' promulgation and application of the Interim Final Rule—and rest upon the same legal theories under the APA.

96. Resolution of Karen's claims does not require adjudication of the merits of her individual asylum application and will turn on the same legal questions applicable to the Class as a whole.

**E. Adequacy - Rule 23(a)(4)**

97. Karen will fairly and adequately protect the interests of the proposed Class. Her interest in obtaining relief from the allegedly unlawful Rule is aligned with the interests of absent Class members, and she has no interest antagonistic to the Class.

98. Karen understands that she seeks to represent similarly situated affirmative asylum applicants and is prepared to fulfill the responsibilities of a class representative.

99. Karen is represented by counsel experienced in federal immigration litigation who are prepared to prosecute this action on behalf of the proposed Class. Karen will seek

appointment of undersigned counsel as Class Counsel pursuant to Federal Rule of Civil Procedure 23(g).

**F. Rule 23(b)(2)**

100. Certification is appropriate under Rule 23(b)(2) because Defendants have acted on grounds that apply generally to the proposed Class by promulgating and implementing a single nationwide Rule authorizing referral of affirmative asylum applications without an interview.

101. The legality of the Rule does not vary among Class members. Declaratory or injunctive relief concerning the Rule therefore would apply to the Class as a whole without requiring individualized determinations concerning any member's eligibility for asylum.

102. Plaintiffs seek relief directed to Defendants' generally applicable conduct, including declaratory relief and appropriate relief under 5 U.S.C. §§ 705 and 706.

103. The proposed Class is cohesive because each member's claims arise from the same Rule, the same rulemaking process, and the same alleged violations of the APA and INA.

104. Accordingly, Karen seeks certification of the proposed Class pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2) and appointment of undersigned counsel as Class Counsel pursuant to Rule 23(g).

## CAUSES OF ACTION

## COUNT I

**Violation of the Administrative Procedure Act**

**Promulgation Without Observance of Procedure Required by Law**

**5 U.S.C. §§ 553, 706(2)(D)**

105. Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

106. The APA generally requires an agency promulgating a rule to publish notice of proposed rulemaking and provide interested persons an opportunity to participate through submission of written data, views, or arguments before the rule is promulgated. 5 U.S.C. § 553(b)–(c).

107. A reviewing court shall "hold unlawful and set aside" agency action taken "without observance of procedure required by law." 5 U.S.C. § 706(2)(D).

108. DHS did not publish a notice of proposed rulemaking or provide any opportunity for public comment before promulgating the Interim Final Rule. Instead, DHS made the Rule effective immediately upon publication on July 28, 2026, while requesting comments only after the Rule had already taken effect and begun governing pending asylum applications. *See Affirmative Asylum Referrals Without Interview*, 91 Fed. Reg. 47,101 (July 28, 2026).

109. DHS principally invoked the exception in 5 U.S.C. § 553(b)(A) for rules of "agency organization, procedure, or practice." That exception does not extend to a purported procedural rule that departs from existing practice and substantially affects the persons regulated. *Brown Express, Inc. v. United States*, 607 F.2d 695, 701–02 (5th Cir. 1979); *see Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

110. The Rule does substantially more than alter DHS's internal organization or administrative housekeeping. It amended 8 C.F.R. §§ 208.4(a), 208.9, 208.10, 208.14(c), and 208.19; authorizes USCIS to refer affirmative asylum applications to removal proceedings without first conducting an asylum interview; removes regulatory language referring to an applicant's "right to an" interview; and eliminates the prior requirement that a referral letter contain an assessment of credibility.

111. Those amendments departed from longstanding agency practice. In 1994, INS expressly considered a proposal to make affirmative asylum interviews discretionary through notice-and-comment rulemaking and declined to adopt it, retaining a regulatory requirement that an interview be conducted before referral. 59 Fed. Reg. 14,779 (Mar. 30, 1994); 59 Fed. Reg. 62,284, 62,285, 62,293–94 (Dec. 5, 1994).

112. In 2000, again following notice and comment, INS specifically determined that questions concerning apparent statutory prohibitions on filing could best be resolved after the applicant had an opportunity to present relevant and useful information to an asylum officer "in an interview" or to an Immigration Judge "in a hearing." 65 Fed. Reg. 76,121, 76,123, 76,131 (Dec. 6, 2000).

113. The Rule reverses those longstanding regulatory choices and permits USCIS to decide whether an application should be referred based upon the written record and other evidence without first providing the non-adversarial interview through which the applicant historically could present testimony, correct or supplement the application, and respond to questions concerning eligibility.

114. DHS also invoked the APA's exception for matters involving a "military or foreign affairs function of the United States." 5 U.S.C. § 553(a)(1). The Rule, however, governs the domestic processing of affirmative asylum applications filed by noncitizens physically present in the United States. DHS identified the Rule's principal purposes as reducing the affirmative-asylum backlog, improving operational efficiency, conserving adjudicative resources, freeing interview capacity, and furthering agency enforcement priorities. Those domestic administrative objectives do not transform the Rule into a foreign-affairs function exempt from § 553's ordinary rulemaking requirements.

115. DHS further made the Rule effective immediately. The APA ordinarily requires publication of a substantive rule at least thirty days before its effective date unless one of the exceptions in § 553(d) applies. 5 U.S.C. § 553(d). DHS acknowledged that requirement but asserted that the Rule either was procedural or relieved a regulatory restriction. 91 Fed. Reg. at 47,127 n.68.

116. The Rule did not merely relieve a restriction imposed upon regulated parties. It altered the procedure governing pending asylum applicants, eliminated a previously required adjudicatory step before referral, and exposed applicants whose cases were already pending to referral under a materially different process immediately upon publication. DHS provided no advance period in which those applicants could adjust their submissions to the newly announced procedure.

117. DHS's solicitation of comments after the Rule became effective did not substitute for the pre-promulgation participation required by § 553. Binding former Fifth Circuit

precedent recognizes that permitting interested persons to comment only after a rule has become effective deprives them of the opportunity to influence the agency's decision before its position has become fixed. *United States Steel Corp. v. EPA*, 595 F.2d 207, 214–15 (5th Cir. 1979); *see Bonner*, 661 F.2d at 1209.

118. The absence of pre-promulgation notice and comment was consequential. Advance participation would have permitted affected applicants and other interested persons to address, among other matters, the Rule's application to already-pending applications, the reliance interests created by the prior interview process, the consequences of adjudicating referral eligibility on the written record alone, and alternatives that could have furthered DHS's efficiency objectives while preserving an opportunity for applicants to be heard.

119. Accordingly, DHS promulgated the Interim Final Rule without observance of procedure required by law, in violation of 5 U.S.C. § 553. The Rule must therefore be held unlawful and set aside pursuant to 5 U.S.C. § 706(2)(D).

**COUNT II –ADMINISTRATIVE PROCEDURE ACT (APA) VIOLATION**

**<u>Agency Action Contrary to Law and in Excess of Statutory Authority</u>**

**<u>5 U.S.C. § 706(2)(A), (C)</u>**

120. Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein. Plaintiff Karen Dayana Hernandez Martinez asserts this claim individually and on behalf of the proposed Class.

121. The APA requires a reviewing court to hold unlawful and set aside agency action that is "not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A), (C).

122. Courts exercise independent judgment in determining whether an agency has acted within the authority Congress conferred upon it. *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 412–13 (2024).

123. Congress directed the Executive Branch to "establish a procedure for the consideration of asylum applications." 8 U.S.C. § 1158(d)(1). Congress further provided that, absent exceptional circumstances, "the initial interview or hearing on the asylum application shall commence not later than 45 days after the date an application is filed." Id. § 1158(d)(5)(A)(ii).

124. Congress separately provided consequences where an applicant fails, without authorization or exceptional circumstances, to appear for an "interview or hearing." Id. § 1158(d)(5)(A)(v). These provisions expressly contemplate an interview in the affirmative asylum process or a hearing in proceedings before an Immigration Judge.

125. Congress authorized DHS to impose additional regulatory "conditions or limitations on the consideration of an application for asylum," but expressly limited that authority to conditions or limitations "not inconsistent with this chapter." 8 U.S.C. § 1158(d)(5)(B).

126. The Rule permits USCIS to refer an affirmative asylum application to removal proceedings without conducting an asylum interview and thereby eliminates the

interview from the USCIS adjudicatory process for applicants selected for referral. 8 C.F.R. § 208.9(a)(2).

127. The Rule also removed the regulatory references to an applicant's "right to an" interview, removed the requirement that a referral letter contain an assessment of credibility, and permits USCIS to refer an applicant as a matter of discretion without first determining whether the applicant is statutorily eligible for asylum.

128. These changes cannot be justified solely by the absence of an express statutory sentence stating that every affirmative asylum applicant possesses an independently enforceable right to an interview. The relevant question under § 706(2)(A) and (C) is whether DHS acted consistently with the statutory framework and within the limits Congress imposed upon its delegated authority.

129. Plaintiffs do not contend that 8 U.S.C. § 1158(d)(5) itself creates a freestanding private right of action to compel an asylum interview in every case. Section 1158(d)(7) provides that nothing in subsection (d) shall be construed to create a substantive or procedural right or benefit legally enforceable against the United States or its officers.

130. Plaintiffs instead bring this claim under the APA. Sections 702 and 706 provide the cause of action and standard of judicial review, while § 1158 defines the statutory framework and limitations governing DHS's exercise of delegated authority.

131. Section 1158(d)(7) does not enlarge DHS's rulemaking authority or eliminate the limitation Congress expressly imposed in § 1158(d)(5)(B) that additional regulatory conditions and limitations remain "not inconsistent with this chapter."

132. By authorizing referral from the affirmative asylum process without the interview expressly contemplated by Congress and by the statutory and regulatory structure governing affirmative adjudication, the Rule exceeds the authority delegated to DHS and is contrary to law.

133. Accordingly, the Interim Final Rule must be held unlawful and set aside pursuant to 5 U.S.C. § 706(2)(A) and (C).

**COUNT III –ADMINISTRATIVE PROCEDURE ACT (APA) VIOLATION**

**Arbitrary and Capricious Agency Action – 5 U.S.C. § 706(2)(A)**

134. Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein. Plaintiff Karen Dayana Hernandez Martinez asserts this claim individually and on behalf of the proposed Class.

135. The APA requires a reviewing court to hold unlawful and set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

136. An agency must examine the relevant data and articulate a satisfactory explanation for its action, including a rational connection between the facts found and the choice made. Agency action is arbitrary and capricious where the agency fails to consider an important aspect of the problem, offers an explanation contrary to the evidence before it, or otherwise fails to engage in reasoned decisionmaking. *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29, 43 (1983).

137. An agency changing an established policy must acknowledge the change and provide a reasoned explanation for it. Where the prior policy rested upon factual findings or engendered serious reliance interests, the agency must account for those circumstances in changing course. *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515–16 (2009); *DHS v. Regents of the University of California*, 591 U.S. 1, 30–33 (2020).

138. The Interim Final Rule represents a substantial departure from the affirmative asylum procedures maintained by DHS and its predecessor for decades.

139. In 1994, INS considered making affirmative asylum interviews discretionary and declined to do so after notice and comment, retaining a regulatory framework under which an interview preceded referral. 59 Fed. Reg. 14,779 (Mar. 30, 1994); 59 Fed. Reg. 62,284, 62,285 (Dec. 5, 1994).

140. In 2000, following another notice-and-comment rulemaking, INS determined that questions concerning apparent statutory prohibitions on filing "could best be made after" the applicant was provided an opportunity to present relevant and useful information to an asylum officer "in an interview" or to an Immigration Judge "in a hearing." 65 Fed. Reg. 76,121, 76,123 (Dec. 6, 2000).

141. The Rule reverses those longstanding procedural and adjudicative judgments by authorizing USCIS to refer affirmative asylum applications based upon the written record and other evidence without first conducting an interview.

142. DHS acknowledged that this represented a departure from prior practice. It further acknowledged that permitting an asylum officer to make a discretionary referral

without first determining statutory eligibility constituted "a significant departure from its previous long-standing use of discretion in affirmative asylum adjudications." 91 Fed. Reg. at 47,115.

143. Yet DHS did not adequately explain why the agency's prior judgment concerning the value and function of an asylum interview was no longer valid or identify a materially changed factual basis undermining the agency's earlier determination that relevant filing issues were best resolved after an opportunity to present information through an interview.

144. The Rule also fails adequately to account for the reliance interests of applicants whose asylum applications were already pending when the Rule took effect.

145. DHS expressly acknowledged that applicants with pending cases "may have relied on USCIS' practice of interviewing in every case when filing the Form I-589." 91 Fed. Reg. at 47,116.

146. Those reliance interests were concrete. Pending applicants filed and prepared their applications under a regulatory system in which affirmative applicants were ordinarily interviewed before referral, and agency notices and instructions informed applicants that an interview would occur.

147. Karen exemplifies those reliance interests. USCIS accepted her Form I-589, processed Plaintiffs through the affirmative asylum system, and expressly advised Plaintiffs in writing that they would separately receive notice directing them to appear for an asylum interview.

148. DHS nevertheless applied the Rule immediately to already-pending applications without providing those applicants a guaranteed individualized opportunity to supplement their written submissions before referral. DHS instead identified possible measures such as Requests for Evidence or public notice while retaining discretion whether any particular applicant would receive such an opportunity.

149. DHS further acknowledged that the Rule may result in some applications being referred that USCIS otherwise could have granted. The Rule nonetheless does not require an interview before referral, an individualized request for additional evidence, or a credibility determination in the referral decision.

150. DHS also identified alternatives to eliminating interviews, including the possibility of shorter or more limited screening interviews, but did not adequately explain why such alternatives could not address the agency's efficiency concerns while preserving an opportunity for applicants to provide oral information before referral.

151. DHS justified the Rule principally by reference to the size of the affirmative asylum backlog, conservation of USCIS resources, increased operational efficiency, and the ability to devote interview capacity to other applications.

152. Administrative efficiency may be a legitimate agency objective, but it does not relieve DHS of its obligation to reasonably address the consequences of abandoning a longstanding adjudicative process, the factual judgments underlying the prior policy, the reliance interests created by that policy, and reasonable alternatives to the course selected.

153. By reversing longstanding agency policy without adequately addressing the agency's prior judgments, failing to reasonably accommodate the reliance interests of applicants with already-pending applications, and failing to adequately consider important aspects and alternatives implicated by the Rule, Defendants acted arbitrarily and capriciously.

154. Accordingly, the Interim Final Rule must be held unlawful and set aside pursuant to 5 U.S.C. § 706(2)(A).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that this Honorable Court will:

155. Assume jurisdiction over this action;

156. Certify the proposed Class pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2), appoint Plaintiff Karen Dayana Hernandez Martinez as Class Representative, and appoint undersigned counsel as Class Counsel pursuant to Rule 23(g);

157. Declare that Defendants promulgated the Interim Final Rule without observance of procedure required by law, in violation of 5 U.S.C. §§ 553 and 706(2)(D);

158. Declare that the Interim Final Rule is contrary to law and in excess of Defendants' statutory authority, in violation of 5 U.S.C. § 706(2)(A) and (C);

159. Declare that Defendants' promulgation and application of the Interim Final Rule is arbitrary, capricious, and an abuse of discretion, in violation of 5 U.S.C. § 706(2)(A);

160. Stay, pursuant to 5 U.S.C. § 705, the effectiveness and application of the Interim Final Rule as to Plaintiffs and the proposed Class pending final resolution of this action;

161. Hold unlawful and set aside the Interim Final Rule pursuant to 5 U.S.C. § 706(2), or alternatively set aside its application to Plaintiffs and the certified Class;

162. Enjoin Defendants from applying the Interim Final Rule to Plaintiffs and the certified Class in a manner that permits referral of their pending affirmative asylum applications to EOIR without first providing an asylum interview;

163. Remand Plaintiffs' pending Form I-589 to USCIS for further adjudication consistent with applicable statutes, regulations, and this Court's judgment;

164. Award Plaintiffs their reasonable attorneys' fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412, and any other applicable provision of law; and

165. Grant such other and further relief as this Court deems just and proper.

Respectfully submitted,

*/s/Eduardo R. Soto, Esq.*
**Eduardo R. Soto, Esq.**
Florida Bar No. 0858609
Eduardo Soto & Associates, P.A.
999 Ponce de Leon Blvd., Suite 1040
Coral Gables, Florida 33134
Office: (305) 446-8686
Facsimile: (305) 529-0445
Email: federal@esotopa.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on September 29, 2026, I electronically filed the foregoing document with the Clerk of Court using PACER. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties, either via transmission of Notices of Electronic Filing generated by PACER or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/Eduardo R. Soto, Esq.*
**Eduardo R. Soto, Esq.**

## EXHIBIT LIST

| | |
|---|---|
| **EXHIBIT A** | **Form I-589 Receipt Notice** |
| **EXHIBIT B** | **Form I-94** |
| **EXHIBIT C** | **Biometrics Notices** |
| **EXHIBIT D** | **Annual Asylum Fee Receipt** |