**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:26-cv-26233-MD**

**KAREN DAYANA HERNANDEZ MARTINEZ,** individually and on behalf of all others similarly situated, and on behalf of her minor child, **FATIMA VALENTINA REVEROL HERNANDEZ, and MARCOS JAVIER REVEROL GARCIA,**

Plaintiffs,

vs.

**MARKWAYNE MULLIN**, *et al*

Defendants.

**CLASS ACTION**

## PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND INCORPORATED MEMORANDUM OF LAW

Plaintiffs Karen Dayana Hernandez Martinez, Marcos Javier Reverol Garcia, and F.V.R.H., by and through undersigned counsel, respectfully move pursuant to Federal Rule of Civil Procedure 65 and 5 U.S.C. § 705 for a temporary restraining order and preliminary injunction preventing Defendants from relying upon the July 28, 2026 Interim Final Rule, *Affirmative Asylum Referrals Without Interview*, 91 Fed. Reg. 47,101 (July 28, 2026) (the "Rule"), to refer their pending Form I-589 to the Executive Office for Immigration Review ("EOIR") without first providing an affirmative asylum interview. Plaintiffs seek relief only for themselves, do not seek ex parte relief, and do not seek to restrict lawful immigration enforcement independent of the challenged Rule.

USCIS accepted Plaintiffs' asylum application in September 2024, processed their biometrics, and expressly advised them that an asylum interview would follow. [DE 4 at 17–18]. No interview occurred. While their application remained pending, DHS implemented the Rule, authorizing referral without an interview or guaranteed opportunity to supplement the record. 91 Fed. Reg. at 47,112. Defendants have since directed Plaintiffs to report for issuance of Notices to Appear. [DE 4 at 19].

Once removal proceedings commence, Plaintiffs lose the opportunity for initial, non-adversarial consideration by USCIS. 8 C.F.R. §§ 208.2(b), 1003.14(a). Nor is a subsequent full evidentiary hearing guaranteed, as Immigration Judges may pretermit asylum applications that fail to establish prima facie eligibility. *Matter of H-A-A-V-*, 29 I&N Dec. 233, 238–39 (BIA 2025).

This loss of procedural opportunity cannot readily be remedied through damages or subsequent judicial review. Temporary relief is therefore necessary to preserve Plaintiffs' pending affirmative asylum process while the Court determines the Rule's legality.

## BACKGROUND

Karen filed her affirmative Form I-589 with USCIS on September 25, 2024. Marcos and F.V.R.H. were included as derivative beneficiaries. USCIS accepted the application and confirmed that it remained pending. [DE 4 at 17].

USCIS expressly advised Plaintiffs that they would receive separate notice directing them to appear for an asylum interview. Plaintiffs completed biometrics, but USCIS never provided that interview. [DE 4 at 17–18].

On July 28, 2026, while Plaintiffs' application remained pending, DHS promulgated the Rule challenged in this action. The Rule became effective immediately and authorizes USCIS to refer certain affirmative asylum applications to EOIR without first conducting an interview. DHS expressly made the new procedure applicable to applications already pending with USCIS that had not been scheduled for an initial interview. [DE 4 at 14–16].

DHS acknowledged that the Rule represents a "significant departure" from its prior practice and that applicants with pending applications may have relied upon USCIS's practice of providing an interview when preparing their applications. 91 Fed. Reg. at 47,112, 47,115. DHS nevertheless applied the Rule immediately to pending applications without guaranteeing those applicants an individualized opportunity to supplement the record before referral. Indeed, DHS expressly stated that "[i]n some cases, a pending application may be referred without interview and without an RFE." *Id.* at 47,112.

Plaintiffs have never received an affirmative asylum interview. Defendants thereafter directed Plaintiffs to report for issuance of Notices to Appear, taking concrete steps toward transferring their asylum claim from USCIS's affirmative process to removal proceedings. [DE 4 at 19].

## LEGAL STANDARD

A temporary restraining order and preliminary injunction require the movant to establish: "(1) a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005). Irreparable injury must be actual and imminent rather than remote or speculative. *Siegel v. LePore*, 234 F.3d 1163, 1176–77 (11th Cir. 2000) (en banc). When the Government is the opposing party, the balance of equities and public-interest factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

The APA authorizes a reviewing court, "[o]n such conditions as may be required and to the extent necessary to prevent irreparable injury," to issue appropriate process "to preserve status or rights pending conclusion of the review proceedings." 5 U.S.C. § 705. The APA further requires courts to hold unlawful and set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or taken "without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (D).

The APA generally requires an agency to provide notice of proposed rulemaking and an opportunity for public comment before promulgating a substantive rule. 5 U.S.C. § 553(b)–(c). An agency cannot avoid those requirements merely by

characterizing as procedural a rule that substantially changes existing agency practice. *Brown Express, Inc. v. United States*, 607 F.2d 695, 701–02 (5th Cir. 1979). Nor does an opportunity for comment after a rule has already become effective ordinarily substitute for meaningful pre-promulgation participation. *United States Steel Corp. v. EPA*, 595 F.2d 207, 214–15 (5th Cir. 1979). Decisions of the former Fifth Circuit issued before October 1, 1981, are binding precedent in this Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

The APA exempts agency action involving a "foreign affairs function of the United States" from its notice-and-comment requirements. 5 U.S.C. § 553(a)(1). But the general relationship between immigration and foreign affairs is not, standing alone, sufficient to invoke that exception. Courts applying § 553(a)(1) in the immigration context have required a showing that ordinary notice-and-comment procedures would produce concrete and undesirable international consequences. *East Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 775–77 (9th Cir. 2018); *Yassini v. Crosland*, 618 F.2d 1356, 1360 n.4 (9th Cir. 1980).

Agency action is arbitrary and capricious where the agency fails to examine relevant considerations or articulate a reasoned explanation for its decision. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). When an agency changes an established policy, it must also adequately account for serious reliance interests created by the prior policy. *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515–16 (2009); *Department of Homeland Security v. Regents of the University of California*, 591 U.S. 1, 30–33 (2020).

Section 1252(g) applies only to claims arising from the Government's decisions or actions "to commence proceedings, adjudicate cases, or execute removal orders." 8 U.S.C. § 1252(g). The Supreme Court has construed § 1252(g) as directed to those discrete actions rather than as a general jurisdictional bar over all claims related to removal proceedings. *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 482 (1999). Consistent with that limitation, the Eleventh Circuit directs courts to focus on the particular agency action actually being challenged. *Canal A Media Holding, LLC v. U.S. Citizenship & Immigration Services*, 964 F.3d 1250, 1257–58 (11th Cir. 2020).

Section 1252(f)(1) separately limits lower federal courts from enjoining or restraining the operation of 8 U.S.C. §§ 1221–1232 except with respect to their application to an individual noncitizen against whom proceedings under those provisions have been initiated. 8 U.S.C. § 1252(f)(1); *Garland v. Aleman Gonzalez*, 596 U.S. 543, 550–51 (2022).

Finally, Federal Rule of Civil Procedure 65(c) gives the Court discretion to determine the amount of security required for preliminary injunctive relief, including requiring no security where appropriate. *BellSouth Telecommunications, Inc. v. MCIMetro Access Transmission Services, LLC*, 425 F.3d 964, 971 (11th Cir. 2005).

## ARGUMENT

### I. The Court Has Jurisdiction to Preserve Plaintiffs' Pending Affirmative Asylum Process.

Section 1252(g) applies narrowly to challenges arising from the Government's decision or action to commence removal proceedings, adjudicate cases, or execute removal orders. 8 U.S.C. § 1252(g); *Reno*, 525 U.S. at 482. The Eleventh Circuit therefore directs courts to focus on the particular action being challenged. *Canal A Media*, 964 F.3d at 1257–58.

Plaintiffs do not challenge whether DHS may ultimately commence removal proceedings, whether Plaintiffs are removable, or whether they qualify for asylum. They challenge DHS's promulgation and application of a generally applicable rule governing how USCIS adjudicates affirmative asylum applications before referral.

The requested relief is equally narrow. Plaintiffs seek only to prevent Defendants from relying upon the challenged Rule to refer their pending affirmative application without the USCIS interview whose elimination is the subject of this action. The requested injunction does not prevent DHS from exercising lawful immigration authority independent of the Rule.

Section 1252(f)(1) likewise presents no bar because Plaintiffs do not seek to restrain operation of 8 U.S.C. §§ 1221–1232. Their challenge concerns affirmative asylum procedures under 8 U.S.C. § 1158.

The Court therefore has jurisdiction to preserve Plaintiffs' pending affirmative asylum process while it reviews the challenged Rule.

## II. Plaintiffs Are Substantially Likely to Succeed on the Merits.

The Administrative Procedure Act generally requires notice and public comment before an agency promulgates a substantive rule. 5 U.S.C. § 553(b)–(c). An agency cannot evade those requirements merely by characterizing a consequential change in established practice as procedural. *Brown Express, Inc. v. United States*, 607 F.2d 695, 701–02 (5th Cir. 1979). Nor does post-promulgation comment ordinarily substitute for advance participation. *United States Steel Corp. v. EPA*, 595 F.2d 207, 214–15 (5th Cir. 1979).

DHS made the challenged Rule immediately effective on July 28, 2026, without prior notice and comment, invoking the procedural-rule exception under 5 U.S.C. § 553(b)(A) and the foreign-affairs exception under § 553(a)(1). 91 Fed. Reg. at 47,101. Neither adequately justifies the Rule's consequences for already-pending asylum applications.

**First, the Rule does more than modify internal agency procedures.** For decades, USCIS interviewed affirmative asylum applicants before determining whether to refer their applications to Immigration Court. Those interviews allowed applicants to explain their claims, clarify deficiencies, and provide information relevant to eligibility. See 8 C.F.R. § 208.9(b). The Rule now permits USCIS to refer applications based solely on the written record, without an interview. 8 C.F.R. § 208.9(a)(2).

The consequences are substantial. Once removal proceedings commence, applicants lose the opportunity for initial, non-adversarial asylum consideration by USCIS. 8 C.F.R. §§ 208.2(b), 1003.14(a). In *Brown Express*, the former Fifth Circuit

rejected the procedural-rule exception where eliminating a longstanding notification practice deprived affected parties of an opportunity to provide information before agency action. 607 F.2d at 699–702. Similarly, eliminating asylum interviews may deprive USCIS of testimony and clarification material to its referral determination. Administrative efficiency does not, by itself, place such a consequential change within the procedural-rule exception.

**Second, the foreign-affairs exception does not automatically encompass domestic asylum procedures merely because they concern immigration.** Although DHS relied upon a February 2025 determination broadly characterizing immigration-related measures as foreign-affairs functions, the challenged Rule governs USCIS's domestic processing of applications already filed within the United States. 91 Fed. Reg. at 47,116. Courts have distinguished immigration measures directly implicating foreign relations from domestic regulatory changes and have required concrete foreign-affairs consequences to justify bypassing notice and comment. *East Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 775–77 (9th Cir. 2019). DHS's objectives of reducing backlogs and accelerating referrals do not, standing alone, establish such consequences.

**Third, DHS failed to adequately accommodate serious reliance interests created by its longstanding interview practice.** An agency changing established policy must reasonably consider reliance interests arising under the prior policy. *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515–16 (2009); *Department of Homeland Security v. Regents of the University of California*, 591 U.S. 1, 30–33 (2020).

DHS expressly acknowledged that applicants with pending applications may have relied upon receiving an asylum interview and that interviews provide an important opportunity to explain sensitive information. 91 Fed. Reg. at 47,112, 47,116–17. Nevertheless, DHS immediately applied the Rule to pending applications without guaranteeing individualized notice or an opportunity to address deficiencies before referral.

Although DHS identified possible accommodations, including requests for evidence and voluntary supplementation, those measures are discretionary and do not adequately replace an interview. Indeed, DHS acknowledged that pending applications may be referred without either an interview or an RFE. *Id.* at 47,112. Applicants who anticipated an interview may therefore be referred without knowing which aspects of their written submissions USCIS considered deficient or having an individualized opportunity to respond.

Plaintiffs illustrate this problem. Karen filed her Form I-589 on September 25, 2024, under the prior procedure. USCIS accepted the application, processed Plaintiffs' biometrics, and expressly informed them that an asylum interview would follow. [DE 4 at 17–18]. Plaintiffs complied with USCIS's requirements, but DHS changed the governing procedure before providing that interview.

While DHS has legitimate interests in administrative efficiency and immigration enforcement, those interests do not excuse its obligation to reasonably address the distinct circumstances of applicants whose cases were already pending. DHS offered no

guaranteed transitional protection for applicants who filed in reliance upon the former procedure.

Plaintiffs do not assert an unconditional statutory right to an asylum interview. They challenge DHS's elimination of an established adjudicatory opportunity for pending applicants without complying with required rulemaking procedures or adequately addressing acknowledged reliance interests.

Accordingly, Plaintiffs are substantially likely to succeed under 5 U.S.C. § 706(2)(A) and (D).

## III. Plaintiffs Face Irreparable Harm Absent Temporary Relief.

To establish irreparable harm, Plaintiffs must demonstrate an injury that is actual and imminent, rather than remote or speculative, and that cannot be adequately remedied through monetary damages. *Siegel v. LePore*, 234 F.3d 1163, 1176–77 (11th Cir. 2000) (en banc).

The threatened injury here is the loss of a specific procedural opportunity: the ability to present Plaintiffs' pending asylum application through USCIS's non-adversarial affirmative asylum process before any referral made pursuant to the challenged Rule. Once that opportunity is extinguished and jurisdiction transfers to the Immigration Court, the injury cannot readily be remedied by a later ruling addressing the Rule's legality.

Plaintiffs submitted their affirmative asylum application on September 25, 2024, under the procedures then in effect. USCIS accepted the application and expressly advised Plaintiffs that they would receive separate notice directing them to appear for an asylum interview. [DE 4 at 17–18]. That interview was intended to provide an opportunity to explain the asylum claim, clarify the written record, respond to questions, and present information relevant to eligibility. See 8 C.F.R. § 208.9(b).

The challenged Rule now permits USCIS to bypass that opportunity and refer the application to EOIR based upon the existing written record and other available evidence. 8 C.F.R. § 208.9(a)(2). For applicants who prepared their applications under the prior procedure, the absence of an interview is particularly consequential because their written submissions were prepared when USCIS's established practice contemplated an additional opportunity to present relevant information directly to an asylum officer.

DHS itself recognized the potential consequences of this change. In promulgating the Rule, DHS acknowledged that some applications referred without interview might otherwise have been granted by USCIS under the former procedure. 91 Fed. Reg. at 47,118. DHS further recognized that affected applicants could lose the opportunity to present their claims in a non-adversarial setting and experience additional delays and uncertainty after referral. *Id.* at 47,125.

These acknowledgments are significant. They establish that the threatened loss of the USCIS process is not merely a consequence imagined by Plaintiffs. DHS expressly

recognized that eliminating interviews may alter the path of applications that otherwise could have received favorable affirmative adjudication.

Nor is the opportunity to supplement an application voluntarily an adequate substitute for the interview Plaintiffs were previously advised to expect. DHS expressly stated that, in some cases, a pending application may be referred without an interview or an RFE. 91 Fed. Reg. at 47,112. Consequently, Plaintiffs may receive no individualized notice identifying deficiencies in their existing submission before USCIS decides to refer their application.

The circumstances of Plaintiffs' application further distinguish their position from the general category of cases involving untimely asylum filings emphasized in the Rule. Karen entered the United States on September 29, 2023, and filed her Form I-589 on September 25, 2024, four days before the first anniversary of her entry. [DE 4 at 17]. Thus, the application was filed within the statutory one-year period, rather than presenting the facial untimeliness issue that DHS identified as a principal example supporting interview-free referrals. Although the Rule permits referral on other grounds, Plaintiffs' timely filing underscores why an individualized assessment of their application matters.

The loss becomes especially consequential once proceedings commence before EOIR. Upon the filing of a charging document with the Immigration Court, jurisdiction vests in the Immigration Judge, and the asylum application proceeds within the removal process rather than through USCIS's affirmative adjudication. 8 C.F.R. §§

208.2(b), 1003.14(a). Plaintiffs consequently lose the opportunity to obtain an initial, non-adversarial determination from the asylum office.

Although Plaintiffs may pursue asylum before an Immigration Judge, that subsequent proceeding does not necessarily restore the procedural opportunity they lost. The BIA has recognized that an Immigration Judge may pretermit an asylum application without conducting a full evidentiary merits hearing where the factual allegations, viewed favorably to the applicant, fail to establish prima facie eligibility. *Matter of H-A-A-V-*, 29 I&N Dec. 233, 238–39 (BIA 2025). The governing regulations likewise permit pretermission without a full hearing, subject to the applicable procedural requirements. 8 C.F.R. § 1208.13(e).

Plaintiffs do not contend that referral necessarily results in pretermission or that Immigration Court proceedings categorically deprive applicants of meaningful process. Rather, the possibility of pretermission demonstrates why subsequent proceedings cannot be presumed to replace the lost USCIS interview. An applicant may be referred on a written record that could have been clarified through a non-adversarial interview and later face adjudication without a full evidentiary hearing.

Indeed, DHS acknowledged in the Rule's own regulatory analysis that eliminating USCIS interviews may leave EOIR without a fully developed record and that some referred cases may be resolved without a full merits hearing. 91 Fed. Reg. at 47,125. This reinforces the concern that a later opportunity to seek relief before EOIR

does not necessarily provide the same procedural protection that would have existed before an interview-free referral.

The threatened injury is also tied to Plaintiffs' particular circumstances. Their application was pending before USCIS when the Rule became effective, and they had never received an affirmative asylum interview. Defendants have already taken concrete steps toward placing Plaintiffs in removal proceedings, including directing them to report to immigration authorities for issuance of Notices to Appear. [DE 4 at 19]. These circumstances place Plaintiffs at risk of losing their pending affirmative asylum process before the Court can determine whether the Rule authorizing interview-free referral was lawfully promulgated.

Once that transfer occurs, monetary damages cannot recreate the opportunity to appear before a USCIS asylum officer before referral. Nor can subsequent review necessarily restore the procedural position Plaintiffs occupied while their application remained pending within USCIS's affirmative process. The injury consists not simply of additional litigation expense or delay, but of the loss of the very opportunity for agency consideration that this action seeks to preserve.

The requested temporary relief is narrowly tailored to prevent that injury. Plaintiffs do not seek an asylum determination, immunity from lawful removal proceedings, or an injunction against immigration enforcement independent of the challenged Rule. They seek only to prevent Defendants from relying upon the

challenged Rule to refer their pending affirmative asylum application without an interview while the Court considers the legality of that procedure.

Preserving Plaintiffs' existing procedural position during judicial review would prevent the threatened loss of an adjudicatory opportunity that may be impossible to restore after referral. Plaintiffs therefore face irreparable harm absent temporary relief.

**IV. The Balance of Harms Favors Plaintiffs.**

The Court must weigh Plaintiffs' threatened irreparable injury against the harm temporary relief would impose upon Defendants. *Schiavo*, 403 F.3d at 1225–26.

Absent relief, Plaintiffs risk permanently losing the opportunity to present their pending asylum application through USCIS's non-adversarial affirmative process before this Court determines whether DHS lawfully eliminated that opportunity. Once their application is referred and jurisdiction transfers to the Immigration Court, the lost opportunity for initial consideration by USCIS cannot readily be restored.

By contrast, the burden on Defendants is limited. Although DHS has a legitimate interest in efficiently administering the asylum system, reducing adjudicatory backlogs, and enforcing immigration laws, Plaintiffs do not seek to suspend the Rule nationwide, obtain an asylum determination, or prevent DHS from exercising lawful immigration authority independent of the challenged Rule. They seek only to preserve their pending affirmative application against referral without an interview pursuant to the challenged Rule while the Court considers its legality.

The requested relief would therefore impose, at most, a temporary and individualized limitation on Defendants' use of the challenged procedure, without materially interfering with their broader immigration enforcement responsibilities. That limited burden is outweighed by the threatened loss of a procedural opportunity that may be impossible to restore after referral. Accordingly, the balance of harms favors temporary relief.

**V. Temporary Relief Serves the Public Interest.**

Where the Government is the opposing party, the balance of equities and public-interest factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

The public has a substantial interest in the efficient and orderly administration of the immigration laws. That interest, however, must be considered alongside the public's equally important interest in ensuring that federal agencies comply with the Administrative Procedure Act and that potentially unlawful agency action remains subject to meaningful judicial review.

The requested injunction accommodates these competing interests. It does not prevent DHS from administering the asylum system, exercising lawful immigration enforcement authority, or applying the challenged Rule to persons beyond the individual Plaintiffs. Instead, it preserves Plaintiffs' existing procedural position for a limited period while the Court determines whether DHS lawfully eliminated the affirmative asylum interview from applications already pending when the Rule became effective.

Permitting Plaintiffs' affirmative asylum process to be extinguished through application of the challenged Rule before judicial review could render any subsequent relief substantially less effective. By contrast, temporarily preserving that process would maintain the Court's ability to afford meaningful relief without deciding Plaintiffs' asylum eligibility or substantially disrupting DHS's broader responsibilities.

Because the requested relief is narrowly tailored to preserve meaningful judicial review while respecting the Government's legitimate enforcement interests, the public interest favors temporary relief.

**VI. No Security Should Be Required.**

Rule 65(c) permits the Court to determine the amount of security required for preliminary injunctive relief, including requiring no security where appropriate. *BellSouth*, 425 F.3d at 971.

The requested injunction merely requires Defendants to refrain temporarily from referring Plaintiffs' pending asylum application under the challenged Rule without first providing an interview. Defendants face no identifiable monetary loss from that restraint. The Court should therefore set security at $0.

**CONCLUSION**

Plaintiffs filed their affirmative asylum application under a regulatory framework in which USCIS expressly informed them that an asylum interview would follow. While their application remained pending, DHS promulgated the challenged

Rule, immediately authorizing USCIS to refer certain pending applications to EOIR without first providing that interview or guaranteeing an individualized opportunity to supplement the record.

Absent temporary relief, Plaintiffs risk losing the very procedural opportunity this action seeks to preserve before the Court can determine whether DHS lawfully eliminated it. Once their application is referred and jurisdiction transfers to the Immigration Court, Plaintiffs may lose the opportunity for initial, non-adversarial consideration by USCIS without any guarantee that a subsequent full evidentiary hearing will replace the lost interview. That injury cannot readily be remedied through monetary damages or recreated through later judicial review.

Plaintiffs have demonstrated a substantial likelihood of success on their APA claims, a threatened irreparable injury, a balance of equities favoring preservation of the status quo, and a public interest in ensuring lawful agency action. The requested relief is narrowly limited to Plaintiffs' pending application and does not prevent Defendants from exercising lawful immigration authority independent of the challenged Rule.

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court:

1. Enter a Temporary Restraining Order, pursuant to Federal Rule of Civil Procedure 65 and 5 U.S.C. § 705, restraining Defendants, their officers, agents, employees, and persons acting in concert with them who receive actual notice of the Order, from relying upon the July 28, 2026 Interim Final Rule, *Affirmative Asylum Referrals Without Interview*, to refer or cause the referral of Plaintiffs'

pending Form I-589 to EOIR without first providing an affirmative asylum interview;

2. Upon appropriate proceedings, enter a Preliminary Injunction maintaining the same narrowly tailored protection during the pendency of this action or until further Order of the Court;
3. Specify that the requested relief does not prohibit Defendants from exercising lawful immigration authority independent of the challenged Rule, adjudicate Plaintiffs' eligibility for asylum, or extend relief to the proposed Class;
4. Waive the security requirement under Federal Rule of Civil Procedure 65(c), or set security in the amount of $0; and
5. Grant such other and further relief as this Court deems just and proper.

Respectfully submitted,

*/s/Eduardo R. Soto, Esq.*

**Eduardo R. Soto, Esq.**
Florida Bar No. 0858609
Eduardo Soto & Associates, P.A.
999 Ponce de Leon Blvd., Suite 1040
Coral Gables, Florida 33134
Office: (305) 446-8686
Facsimile: (305) 529-0445
Email: federal@esotopa.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on October 27, 2026, I electronically filed the foregoing document with the Clerk of Court using PACER. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties, either via transmission of Notices of Electronic Filing generated by PACER or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/Eduardo R. Soto, Esq.*
**Eduardo R. Soto, Esq.**